NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0192n.06

No. 25-1542

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Apr 28, 2026
KELLY L. STEPHENS, Clerk

EDWARD KHALIL, )
    Plaintiff-Appellant, )
)
v. )
)
ERNEST WILSON, et al., )
    Defendants-Appellees. )
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

OPINION

Before: KETHLEDGE, WHITE, and LARSEN, Circuit Judges.

KETHLEDGE, Circuit Judge. Edward Khalil sued three Detroit police officers, alleging that they fabricated evidence and withheld impeachment material, which later contributed to his conviction for murder. The district court entered summary judgment in the defendants' favor, and Khalil now appeals. We reject his arguments and affirm.

I.

One night in September 2011, Anthony Jones and Arthur Richardson broke into a vacant building in Detroit to strip it of copper. A resident of a nearby apartment building told the building's owners about the break-in, and one of the owners—Edward Khalil—called the police. The police came to the building but declined to search its upper floors for Jones and Richardson (who were still inside). The police left. Khalil says he too left, while an employee—Charles Shavers—stayed behind and searched for the intruders. During Khalil's drive home, Khalil says, Shavers called to tell him that he had found Jones and Richardson, prompting Khalil to return to the building. When he arrived, Khalil continues, Jones had already been shot and killed.

After several hours, Khalil called the police to report the shooting. The responding officers spoke with Khalil and Shavers; according to the officers, Shavers said he had shot Jones (which Shavers later denied). The police—including officers Karen Miller, Ernest Wilson, and Derryck Thomas—continued to investigate, and obtained statements from two witnesses who, shortly after the shooting, saw someone (whom they would later identify as Khalil) with a gun. One witness heard Khalil say "we got him"; the other, "I killed that motherfucker." The police arrested both Shavers and Khalil. Two days after the shooting, Miller submitted a "request for warrant" to the prosecutor, which included her summary of the police investigation, along with the underlying witness statements and other evidence. Two days after that, the prosecutor recommended that Khalil be charged with murder.

At trial, Shavers testified that it was Khalil who had shot Jones. The jury convicted Khalil of second-degree murder and another charge. In 2020, the Wayne County Prosecutor's Office moved to vacate Khalil's conviction based on newly discovered evidence that tended to exonerate him. The court thus vacated Khalil's conviction. Khalil then brought this section 1983 action against Miller, Wilson, and Thomas. The defendants moved for summary judgment, which the district court granted. This appeal followed.

## II.

Khalil raises three arguments on appeal. First, he argues that a reasonable jury could have found that Miller fabricated evidence that affected his conviction, thereby violating, he says, his right to due process under the Fourteenth Amendment. In particular, he contends that Miller's summary of the police investigation falsely asserted that Khalil had killed Jones while "positioned outside of the window and to the right of Jones," by firing one shot with a shotgun Miller identified by serial number. *See* R. 92-3, PageID 2074. Khalil says a reasonable jury could have found that

Miller's "vivid" narrative was knowingly fabricated, because she knew that there were no eyewitnesses to, or recordings of, Khalil shooting Jones, and because she knew that Shavers had already confessed to the shooting. Appellant Br. at 22-23.

To make out a claim for fabrication of evidence, however, a plaintiff must also show a reasonable likelihood that the allegedly false evidence "affected the decision of the jury." *Jackson v. City of Cleveland*, 925 F.3d 793, 816 (6th Cir. 2019) (citation modified). And here, Khalil has not even argued that Miller's narrative was introduced at trial, or developed any argument based on the trial record. Instead, he only asserts—in conclusory fashion—that, generally, a jury would be affected by such evidence. Neither has he argued that the narrative affected the prosecutor's decision to charge him, or the trial court's finding of probable cause at his preliminary hearing, or any other stage antecedent to trial. Thus, he cannot show any likelihood that Miller's statements affected the jury's verdict, and his claim against her fails. *See id.* at 816-17.

Second, Khalil argues that a reasonable jury could have found that officers Wilson and Thomas fabricated evidence by coercing Shavers into falsely testifying that Khalil shot Jones. True, Khalil has evidence that Wilson was biased against him: A man who claims he heard the gunshot and saw Shavers with a gun said that Wilson approached him that morning and told him that Khalil (whom Wilson allegedly referred to as "that Arab") had killed Jones ("that brother"); Wilson then asked for the witness's help to "nail" Khalil, but ignored him after the witness said that Shavers had shot Jones. R. 102-18, PageID 7146. But Khalil's allegation that the officers coerced or otherwise fabricated Shavers's testimony implicating him is speculative. The lone facts Khalil cites are that Wilson met with Shavers while Shavers was in jail—where Shavers refused to talk to him without a lawyer—and that Wilson talked to Shavers "on several occasions" before trial. Appellant Br. at 23-26. On this record, therefore, no reasonable jury could find that the

officers coerced Shavers (who, if he had shot Jones, had motive enough to implicate Khalil). Hence this claim fails. *See Price v. Montgomery Cnty.*, 72 F.4th 711, 723 (6th Cir. 2023); *see also K.V.G. Props., Inc. v. Westfield Ins. Co.*, 900 F.3d 818, 823 (6th Cir. 2018).

Finally, Khalil argues that a reasonable jury could have found that Wilson and Thomas suppressed impeachment evidence. Specifically, he contends that they failed to disclose to the prosecutor that they were paying for the apartment (among other things) of a witness who testified against him. That nondisclosure, Khalil says, violated his right to due process. *See Brady v. Maryland*, 373 U.S. 83, 86 (1963). But a plaintiff must amend his complaint to raise a new claim; he cannot do so for the first time in response to a motion for summary judgment. *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005). And here, Khalil discovered the putative basis for this claim during discovery, and raised it for the first time in opposing summary judgment. He failed, however, to amend his complaint, or to explain his failure to do so. Hence this claim fails.

The district court's judgment is affirmed.